**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| M.O. & T.O. *o/b/o* S.O.,<br><br>Plaintiffs,<br><br>v.<br><br>NORTH BRUNSWICK TOWNSHIP BOARD OF EDUCATION,<br><br>Defendant. | Civil Action No. 25-6127 (MAS) (JBD)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon two motions: (1) Plaintiffs T.O. and M.O. on behalf of S.O.'s (collectively, "Plaintiffs") Cross-Motion for Summary Judgment (ECF No. 27); and (2) Defendant North Brunswick Township Board of Education's ("Defendant" or the "District") Motion for Summary Judgment (ECF No. 30). Defendant opposed Plaintiffs' motion (ECF No. 29), Plaintiffs replied in further support of their motion and in opposition to Defendant's motion (ECF No. 33), and Defendant replied in further support of its motion (ECF No. 34). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated below, the Court grants Defendant's motion and denies Plaintiffs' motion.

## I. BACKGROUND

### A. Overview of the Individuals with Disabilities Act (the "IDEA")

Through the IDEA, the federal government provides funding to assist states with educating disabled children living within their borders. *See* 20 U.S.C. §§ 1400, *et. seq.*; *see also Blunt v.*

*Lower Merion Sch. Dist.*, 767 F.3d 247, 267 (3d Cir. 2014) ("Congress enacted the IDEA[] . . . with [the] goal of 'improving educational results for children with disabilities.'" (quoting 20 U.S.C. § 1400(c)(1))). States receiving these funds must adopt a set of policies and procedures meant to guarantee that all disabled children receive a free appropriate public education ("FAPE"). 20 U.S.C. §§ 1412(a), 1413(a); *Blunt*, 767 F.3d at 267-68. If a child is deemed to have a disability, then a state satisfies its duty to provide a FAPE by providing "an [Individualized Education Program ('IEP')], which is 'an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.'" *J.M. v. Summit City Bd. of Educ.*, No. 19-159, 2020 WL 6281719, at *1 (D.N.J. Oct. 27, 2020) (quoting *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 403 (2017)), *aff'd*, 39 F.4th 126 (3d Cir. 2022). "If parents are dissatisfied with the district's determinations or IEP, they may bring a challenge in a state administrative process and then seek review in court." *Id.* (citation omitted).

**B. Factual Background**

Plaintiffs are the parents and legal guardians of S.O., their now-adult child who turned twenty-one in the 2022-2023 school year. (Pls.' Statement of Facts ("PSOF") ¶¶ 1, 8, ECF No. 27-2; Def.'s Response to Statement of Facts ("DRSOF") ¶¶ 1, 8 (not disputing year S.O. turned twenty-one), ECF No. 29.) S.O. is classified as Multiply Disabled due to diagnoses of autism, intellectual disability, anxiety, and emotional dysregulation. (PSOF ¶ 7; DSOF ¶ 7 (disputing characterization of severity of S.O.'s diagnoses, but not disputing S.O.'s diagnoses themselves); ALJ Op. JA58, ECF No. 22[1].) S.O. began attending school in the District in the 2018-2019 school year during her sophomore year of high school. (Def.'s Statement of Facts

[1] The Joint Appendix (the "JA") is located at ECF Nos. 22 through 22-6. The Court will reference the relevant pages of the JA (e.g., "JA1" or "JA50") and will not reference the corresponding ECF page numbers within those files. Additionally, the Court cites to the ALJ's Opinion contained in the JA at JA56-75 as "ALJ Op. [JA page number]."

("DSOF") ¶ 13, ECF No. 30-4; Pls.' Response to Statement of Facts ("PRSOF") ¶ 13, ECF No. 33-2 (not disputing timing that S.O. began school in the District).)

In or around March 2020, the District moved to virtual learning due to the COVID-19 pandemic. (DSOF ¶ 14; PRSOF ¶ 14 (not disputing that the District moved to virtual instruction at that time); ALJ Op. JA61.) S.O.'s November 2020 IEP stated that during virtual learning, "[S.O.] has been fairly consistent with homeroom attendance . . . . During group/check-in, [S.O.] has been an active participant, cooperative and verbal." (PSOF ¶¶ 59-60; DRSOF ¶¶ 59-60 (alterations in original) (citing JA163-80); JA168.) The November 2020 IEP also indicated, among other notes, that S.O. "always logs on to the Google meet session on time . . . [and] completes all her work on time." (JA169.) In regard to distance learning, the IEP stated that S.O. "has adapted to these new routines and can usually follow them independently." (*Id.*)

S.O. returned to in-person instruction in Spring 2021. (PSOF ¶ 79; DRSOF ¶ 79.) S.O. struggled during Spring 2021 due to "constant change, virtual [and] in person [instruction], [and] mask mandates." (PSOF ¶ 83; DRSOF ¶ 83.) During this period S.O. also experienced "non-epileptic seizures," resulting in her being assigned a one-on-one aide (PSOF ¶ 83; DRSOF ¶ 83) and being taken to the hospital on two occasions (PSOF ¶ 78; DRSOF ¶ 78).

In June 2021, at the end of twelfth grade, S.O. received a certificate stating that she had completed all the requirements for graduation and that she had chosen to remain a student in order to attend the Possibilities Plus Program until the end of the school year in which she turns twenty-one. (PSOF ¶ 37 (citing JA231); DRSOF ¶ 37 (not disputing fact that S.O. received a certificate, but stating that the document should speak for itself); JA184; JA231.) In August 2021, prior to returning to the District for the Possibilities Plus Program in Fall 2021, Plaintiffs sought a

medical exemption to allow S.O. to wear a face shield instead of a mask because of her non-epileptic seizures and mental health. (PSOF ¶ 39; DRSOF ¶ 39.) In an e-mail message, Barbara Barr ("Barr"), S.O.'s case manager, stated that based on "the information provided by [S.O.'s] doctor . . . [S.O.] does[ not] meet the medical requirement not to wear a mask[ and] [i]t is not a danger to her health to wear a mask and wearing a mask would not lead to further illness." (PSOF ¶ 42 (quoting JA186); DRSOF ¶ 42 (admitting fact but stating that document speaks for itself); JA186.)

Due to S.O.'s inability or unwillingness to wear a mask, she did not attend the Possibilities Plus Program that she was meant to begin in Fall 2021.[2] (DSOF ¶ 22; PRSOF ¶ 22 (not disputing that S.O. would not come to school after mask exemption was denied); ALJ Op. JA59.) On September 21, 2021, S.O. sent e-mail correspondence to Barr stating that she was not going to return to the District, and Barr replied that if this was S.O.'s decision, then S.O. would be deemed a graduate and sent her diploma. (PSOF ¶ 47; DRSOF ¶ 47 (disputing characterization of e-mail correspondence but not denying that the correspondence was sent); JA234.) T.O. and M.O. were copied on Barr's e-mail message, along with other employees in the District. (JA234.)

On October 11, 2021, the District sent correspondence to Plaintiffs stating that because S.O. had been absent for more than ten consecutive days, she would be "drop[ped] . . . from the rolls" as per the District's policy. (PSOF ¶ 48 (citing JA235); DRSOF ¶ 48 (disputing characterization of correspondence but not disputing its existence); JA235.) On October 18, 2021, the District mailed another correspondence to Plaintiffs. (PSOF ¶ 49 (citing JA188); DRSOF ¶ 49 (disputing characterization of correspondence, but not disputing existence of document which

[2] Plaintiffs deny this fact insofar as Defendant states that S.O. "refused" to attend the Possibilities Plus Program. (DSOF ¶ 22; PRSOF ¶ 22.)

"speaks for itself"); JA188.) This correspondence recommended that Plaintiffs begin the process of applying for adult services under the New Jersey Division of Developmental Disabilities (the "DDD"). (JA188; ALJ Op. JA59.) The correspondence also stated that a diploma was enclosed. (JA188.) Plaintiffs deny having received S.O.'s high school diploma. (PSOF ¶ 53; DRSOF ¶ 53 (disputing fact because "Plaintiffs were provided S.O.'s diploma under cover of the letter from . . . Barr dated October 18, 2021"); ALJ Op. JA59.)

In February or March 2022, Plaintiffs contacted the District about the possibility of S.O. returning to school with a mask exemption. (DSOF ¶ 27; PRSOF ¶ 27; ALJ Op. JA59.) The District offered a Compensatory Service Plan (the "CSP") which placed S.O. at the Center School, an out-of-district school for students with disabilities. (PSOF ¶ 67; DRSOF ¶ 67 (not disputing existence of CSP); DSOF ¶ 27; PRSOF ¶ 27; ALJ Op. JA60.) Defendant contracted with the Center School to fund S.O.'s enrollment at Center School (PSOF ¶ 75 (citing JA244-57); DRSOF ¶ 75 (not disputing District's funding).) The Center School contracts provided for approximately one month of schooling at the end of the 2021-2022 school year (JA244 ¶ 2) and the full 2022-2023 school year (JA250 ¶ 2). While S.O. was attending the Center School, her profile was reactivated in the NJ SMART system. (DSOF ¶ 29; PRSOF ¶ 29.) Defendant contends that this was "only in furtherance of" paying the Center School. (DSOF ¶ 29.)

Plaintiffs filed a Request for Mediation against Defendant on May 2, 2023, for S.O. to remain at the Center School after the CSP expired. (DSOF ¶ 1; PRSOF ¶ 1.) On May 15, 2023, the Request for Mediation was converted to a Due Process Petition. (DSOF ¶ 1; PRSOF ¶ 1.) Plaintiffs filed a motion for emergency relief to receive a stay-put order for S.O. to remain at the Center School while the dispute was pending, which was heard on June 14, 2023, by the New Jersey Office of Administrative Law (the "OAL"). (DSOF ¶ 2; PRSOF ¶ 2.) The Administrative Law

Judge (the "ALJ") denied Plaintiffs' motion for interim emergency relief. (DSOF ¶ 3; PRSOF ¶ 3.) Plaintiffs appealed to the New Jersey District Court on June 27, 2023. (DSOF ¶ 4; PRSOF ¶ 4.) On May 31, 2024, the Honorable Zahid N. Quraishi upheld the ALJ's denial of stay-put protection. (DSOF ¶ 5; PRSOF ¶ 5.)

Thereafter, the ALJ held hearings on Plaintiffs' Due Process Petition on several dates between March 6, 2024, and September 23, 2024. (DSOF ¶ 6; PRSOF ¶ 6 (not denying that ALJ held several due process hearings).) The ALJ subsequently issued an Opinion on March 3, 2025. (*See generally* ALJ Op.)

### C. The ALJ's Decision

In his decision, the ALJ found in favor of Defendant, determining that S.O. had received a FAPE as required under the IDEA and that S.O. was not entitled to further compensatory education. (ALJ Op. JA70.) The ALJ considered testimony from two witnesses for Defendant: Barr and Christopher Harry ("Harry"), as well as two witnesses for Plaintiffs: T.O. (S.O.'s father) and Dr. Michelle Havens ("Havens"). (*See generally id.*) The ALJ credited and outlined the testimony below by these witnesses.[3]

#### *1. Barr Testimony*

Barr "testified as an expert witness in special education with a specialization in transitional services." (*Id.* at JA57.) Barr has been a case manager and social worker at the District for eight years and manages the transition of students from the Possibilities Plus Program to the DDD. (*Id.*) "Barr explained that she relied on her team and their combined expertise to ensure that the [IEPs] are appropriate and executed." (*Id.* at JA58.)

[3] For purposes of this section, the Court recites the below testimony only as the ALJ presented it in his Opinion.

Barr testified that she became S.O.'s case manager at the end of S.O.'s freshman year. (*Id.*) Initially, S.O. was at Montgomery Academy, an out-of-district placement, but S.O.'s parents contacted Barr "because they felt that S.O. was struggling." (*Id.*) In response, Barr contacted Montgomery Academy and met with S.O.'s parents to establish a plan, which included a request to return S.O. to the District for the programming. (*Id.*)

Barr testified that the Possibilities Plus Program was developed to serve students from the school's self-contained program who were not moving on to college and who would struggle to find meaningful employment after graduation. (*Id.*) The program was intended to help students develop further vocational and independent life skills. (*Id.*) It was also meant to help students who had completed their high school education but were not yet eligible for DDD services because they were not yet twenty-one. (*Id.*) According to Barr, the Possibilities Plus Program was "appropriate" for S.O. and transition services were offered to S.O., including participation in "community-based instruction and structured learning experiences based on areas of interest." (*Id.* at JA58-59.)

Barr testified that S.O. was making "meaningful progress" during her twelfth-grade year (2020-2021), and the Possibilities Plus Program would be an appropriate placement after S.O.'s. graduation. (*Id.* at JA59.) Nevertheless, Barr also testified that S.O. "had issues connected to 'constant change, virtual, in person, mask mandates.'" (*Id.*) S.O. "really" struggled with the mask mandate and the District provided a one-on-one aide for S.O. "for safety[.]" (*Id.*)

Barr testified that Plaintiffs requested and were denied a mask exemption for S.O. (*Id.*) As a result, "S.O. refused to come to school and did not enter the building in the fall of 2021." (*Id.*) On October 1, 2021, Barr sent e-mail correspondence to S.O.'s father indicating that S.O. had "missed [nineteen] days of transition and community-based instruction based on her refusal to

return." (*Id.*) After this correspondence, communication broke down and ceased between Barr and Plaintiffs. (*Id.*)

According to Barr, the District subsequently mailed S.O.'s diploma, a DDD application, and a psychological evaluation to Plaintiffs. (*Id.*) Barr testified that, despite Plaintiffs' denial of receipt of the diploma, S.O. sent "e[-]mail[ correspondence] . . . to friends and [made] Instagram posts" acknowledging that she had received her diploma, but S.O.'s parents never acknowledged receipt. (*Id.*)

After Plaintiffs reached out to the District in March of 2022 to see if S.O. could still return, Barr supported S.O. receiving further schooling through a CSP at the Center School. (*Id.* at JA59-60.) Barr felt it was better for S.O. to receive this schooling at the Center School because of "animosity towards [the District] and [the] program." (*Id.* at JA60.) On cross-examination, Barr testified that S.O. met her graduation requirements and that there was no policy of holding a "'graduation meeting' for special education students prior to graduation." (*Id.*) Instead, according to Barr, this discussion would have occurred during S.O.'s November 2021 IEP meeting, by which point S.O. had already graduated. (*Id.*) Barr also testified that the CSP was agreed upon, "or the Center School would not have accepted her." (*Id.* at JA61.) She reiterated during her testimony that the District chose to, but was not obligated to, provide S.O. further education through the CSP "out of 'graciousness and being in the business of special ed[ucation]' . . . as S.O. was not yet twenty-one and eligible for DDD services." (*Id.*) According to Barr, no IEP was prepared for S.O. at that time because S.O. was no longer a student at the District. (*Id.*)

### 2. *Harry Testimony*

Harry "testified as an expert witness in educational supervisory roles" as he worked as the director of school personnel, including special education, at the District. (*Id.*) He was not

personally involved in S.O.'s IEP or in arranging the compensatory services. (*Id.*) He testified that the District moved to virtual learning in 2020 because of the COVID-19 pandemic, and that he did not know who put the mask mandate in place within the District, though he was aware S.O.'s parents "wanted a face shield." (*Id.*) He also testified that "S.O. stopped attending school on her own and then got a diploma . . . [so] she was no longer [under] the purview of [the District]." (*Id.*) Harry agreed that "if a student is graduated[,] then they do not need an IEP." (*Id.*)

### 3. *T.O. Testimony*

T.O., S.O.'s father, testified that S.O. enjoyed attending school in the District but struggled with the mask mandate once she returned to in-person learning. (*Id.* at JA62.) He testified that S.O. had a seizure disorder which was affected by wearing a mask, and that on one occasion, S.O. was taken to the hospital after having a seizure. (*Id.*) According to T.O., "[t]he mask mandate was a problem" and so Plaintiffs wrote to the District requesting that S.O. be permitted to wear a face shield. (*Id.*) T.O. wanted S.O. to return to the District for the Possibilities Plus Program wearing a face shield, but claimed that he "felt like [he] was ghosted . . . it was not [Plaintiffs] ghosting them." (*Id.* (second alteration in original).)

On cross-examination, T.O. denied receiving S.O.'s diploma in the mail and testified that S.O. is in a "pause mode[,]" as "[h]e believes she needs services but is unable to articulate those services." (*Id.*)

### 4. *Havens Testimony*

Havens testified as an expert witness in special education and as a board-certified behavior analyst. (*Id.*) She reviewed documents provided by Plaintiffs' attorney and met with Plaintiffs once. (*Id.* at JA63.) Based on her review of documents and her single meeting with Plaintiffs, Havens produced a report. (*Id.*) She also testified that a January 18, 2024, neurology report showed "S.O.

having a diagnosis of recurring divergence disorder including psychogenic non-epileptic seizure disorder" and that "daily living, behavior, socialization[,] and communication goals were 'missing' from S.O.'s progress reports[.]" (*Id.* at JA62.) Havens testified that "S.O.'s IQ was low (25-50)" and that "[t]here was minimal progress," but also indicated that S.O.'s progress reports from the Center School did demonstrate "a little bit" of progress. (*Id.* at JA62-63.)

On cross-examination, Havens admitted she had not spoken to S.O.'s case manager or anyone at the District or the DDD. (*Id.* at JA63.) She also testified that she was referred to Plaintiffs through an attorney and only met Plaintiffs once. (*Id.*) She admitted that it would have been beneficial to speak to S.O.'s case manager "to some degree" or to observe the Possibilities Plus Program in order to determine whether the program would have met S.O.'s needs at the time. (*Id.*)

### *5. Credibility Determinations*

After consideration of the above testimony and evidence, the ALJ made his credibility findings. The ALJ noted that he did "not find that there is an issue of credibility as much as an issue of experience and knowledge." (*Id.* at JA64.) He determined that the testimony of the District employees, Barr and Harry, "were credible to the extent of implementing [a] FAPE." (*Id.*) He believed that the District did not want to deprive S.O. of any educational opportunities, although the District was also working within the "parameters of the law, regulations, and facts as presented[.]" (*Id.*) The ALJ also believed that Plaintiffs, as S.O.'s parents, sincerely wanted the best educational opportunities for S.O. (*Id.*) The ALJ noted, however, that Havens's testimony was "admittedly based on facts acquired from the lawyer" and that she had not spoken with the DDD or S.O.'s case manager which would have been helpful to do. (*Id.*)

### *6. ALJ's Legal Conclusions and Plaintiffs' Challenges Thereof*

Finally, the ALJ concluded that based on the documentary and testimonial evidence, the District provided S.O. a FAPE and had no further obligation to provide compensatory education. (*Id.* at JA68, JA70.) As a result, the ALJ denied Plaintiffs' due process petition and claim for compensatory education. (*Id.* at JA64-65, JA70.)

On May 29, 2025, Plaintiffs filed a Complaint in this Court. (Compl., ECF No. 1.) On June 23, 2025, Defendant answered. (Answer, ECF No. 6.) Subsequently, on July 21, 2025, Plaintiffs filed an Amended Complaint (Am. Compl., ECF No. 11), and three days later, Defendant filed an Amended Answer (Answer to Am. Compl., ECF No. 13). Plaintiffs' Amended Complaint brings claims: (1) seeking reversal of the ALJ's decision and requesting that the Court find that S.O. was denied a FAPE in violation of the IDEA and that S.O. is entitled to compensatory education; (2) alleging violations of the Americans with Disabilities Act and New Jersey Law Against Discrimination; and (3) seeking damages and legal fees Plaintiffs incurred in pursuing their case against Defendant. (Am. Compl. ¶¶ 209-19.) Because the parties did not intend to bring new evidence before the Court, the parties thereafter filed the instant motions for summary judgment in connection with the ALJ's decision. (Def.'s Mot., ECF No. 30; Pls.' Cross-Mot., ECF No. 27.)

## II. LEGAL STANDARD

"Where no new evidence has been presented to the Court, motions for summary judgment in an IDEA case are the procedural vehicle for asking the judge to decide the case based on the administrative record." *K.H. ex rel. B. Y. v. N. Hunterdon-Voorhees Reg'l High Sch.*, No. 05-4925, 2006 WL 2331106, at *4 (D.N.J. Aug. 10, 2006) (citation omitted). "The standard of review under which this Court considers an appeal of a[n ALJ's] decision under the IDEA differs from that governing the typical review of summary judgment." *G.A. ex rel. M.A. v. Voorhees Twp. Bd. of*

*Educ.*, 202 F. Supp. 2d 345, 359 (D.N.J. 2002) (quotation marks and citation omitted), *aff'd*, 65 F. App'x 404 (3d Cir. 2003). The parties' motions, therefore, "[a]lthough framed as . . . motion[s] for summary judgment, . . . [are] actually . . . appeal[s] of the ALJ's ruling" and the Court will "essentially conduct[] a bench trial based on a stipulated record." *G.S. v. Cranbury Twp. Bd. of Educ.*, No. 10-774, 2011 WL 1584321, at *8 (D.N.J. Apr. 26, 2011); *M.S. v. Mullica Twp. Bd. of Educ.*, 485 F. Supp. 2d 555, 566 (D.N.J. 2007) (citation omitted).

"When deciding an IDEA case, the District Court applies a modified version of *de novo* review and is required to give due weight to the factual findings of the ALJ." *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006) (citations omitted). "Factual findings from the administrative proceedings are to be considered prima facie correct, and if the reviewing court does not adhere to those findings, it is obliged to explain why." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010) (quotation marks omitted) (quoting *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 734 (3d Cir. 2009)). "Moreover, the reviewing court must accept the ALJ's credibility determinations and 'may disturb them only upon a finding that non-testimonial extrinsic evidence justifies a contrary conclusion.'" *E.P. v. N. Arlington Bd. of Educ.*, No. 17-8195, 2019 WL 1495692, at *4 (D.N.J. Apr. 1, 2019) (quoting *C.S. v. Montclair Bd. of Educ.*, No. 16-3294, 2017 WL 4122433, at *5 (D.N.J. Sep. 18, 2017)). An ALJ's legal determinations, on the other hand, are reviewed *de novo*. *Moorestown Twp. Bd. of Educ. v. S.D.*, 811 F. Supp. 2d 1057, 1064 (D.N.J. 2011). "Applying these standards, the district court may make findings 'based on the preponderance of the evidence and grant the relief it deems appropriate, including an award of attorney's fees, a requirement for reimbursement for a private educational placement, and a direction for the provision of a compensatory education.'" *Id.* (quoting *Bayonne*, 602 F.3d at 564).

## III. DISCUSSION

After consideration of the administrative record and the parties' arguments, the Court grants Defendant's motion for summary judgment and denies Plaintiffs' cross-motion for summary judgment. For the reasons discussed below, the ALJ's decision concluding that S.O. received a FAPE and was not entitled to an award of compensatory education is affirmed and Plaintiffs' Count One is therefore dismissed with prejudice. (*See generally* ALJ Op.)

"The IDEA and implementing regulations set forth procedures school districts should follow to identify and evaluate children with disabilities." *J.M.*, 2020 WL 6281719, at *6 (citing *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 250 (3d Cir. 2012)). The IDEA mandates that a school that receives funding must provide a disabled child with a FAPE. *T.R. v. Sch. Dist. of Philadelphia*, 4 F.4th 179, 182-83 (3d Cir. 2021). "The IDEA does not mandate what a FAPE must substantively include beyond a few basic minima, most obviously that the education be provided under public supervision and without charge. . . . The substance of a FAPE is primarily defined to be such special education and related services that are provided in conformity with [a child's] . . . IEP." *Id.* (quotation marks omitted) (quoting 20 U.S.C. § 1401(9)(D)). A school discharges its duty to provide a FAPE when a student ages out under state law or when the student has graduated from high school with a regular diploma. *See* 20 U.S.C. § 1414(c)(5)(B); *M.D. v. Colonial Sch. Dist.*, 539 F. Supp. 3d 380, 390 (E.D. Pa. 2021).

In support of their Cross-Motion, Plaintiffs make multiple arguments as to why the ALJ's decision should be reversed, including because: (1) "there is no dispute that S.O. was denied a FAPE" over the course of three separate school years; (2) the CSP prepared by the District "confirm[s] that S.O. was entitled to compensatory education and . . . placing her [in] a private school for disabled students was the way to compensate her"; and (3) the ALJ did not hold

Defendant accountable for procedural violations of the IDEA regarding S.O.'s alleged graduation as S.O. did not actually graduate. (*See generally* Pls.' Moving Br., ECF No. 27-1.) In its Motion, Defendant argues that the Court should affirm the ALJ's decision because "competent evidence of record supports [the ALJ's] factual findings and legal conclusions." (Def.'s Moving Br. 39, ECF No. 30-3.)

As the parties seeking relief and challenging the ALJ's conclusion, Plaintiffs bear the burden of persuasion in front of this Court. *See Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 270 (3d Cir. 2012) (collecting cases). The Court therefore addresses each of Plaintiffs' arguments in turn below.

### A. Plaintiffs' Arguments That S.O. was Denied a FAPE While Attending School in the District

Plaintiffs first argue that "there is no dispute that S.O. was denied a FAPE during both 2019-2020 and 2020-2021 school years[.]" (Pls.' Moving Br. 26.) To support their argument, Plaintiffs point to: (1) the contents of S.O.'s progress reports from the 2019-2020 and 2020-2021 school years as evidence that S.O. experienced a "lack of progress" and received "little to no programming geared towards preparing S.O. for adulthood" and the District's "acknowledg[ment] that [S.O.] missed [fifty-one] days of school during the 2019-2020 and 2020-2021 school years"; and (2) the District ignoring the recommendation of a medical doctor in denying the accommodation request for S.O. to wear a face shield. (*Id.* at 27.) According to Plaintiffs, this evidence demonstrates a violation of the New Jersey Administrative Code, which requires "appropriate measurable postsecondary goals . . . and the transition services . . . needed to assist the child in reaching those goals[.]" (*Id.* (quoting N.J. Admin. Code § 6A:14-3.7).) Plaintiffs also rely on the testimony of Havens to support their argument that the required transition services were not provided. (*Id.* at 28.)

"To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F.*, 580 U.S. at 399. There is no "bright-line rule" for what appropriate progress may look like, but this is not "an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Id.* at 404 (citation omitted). Rather, the IEP must be calculated to offer more than *de minimis* progress, and a student's "educational program must be appropriately ambitious in light of [her] circumstances[.]" *Id.* at 402. The IDEA also requires, "[t]o the maximum extent appropriate, [that] children with disabilities . . . are educated with children who are not disabled" in regular classrooms. 20 U.S.C. § 1412(a)(5). School and educational authorities must "be able to offer a cogent and responsive explanation for their decisions that shows the IEP is reasonably calculated to enable the child to make progress appropriate in light of [her] circumstances." *Endrew F.*, 580 U.S. at 404.

Here, in evaluating Plaintiffs' substantive challenge regarding whether the District provided S.O. a FAPE, the ALJ concluded that S.O. did receive a FAPE and compensatory education, stating that the District met its burden of proof as "[t]he competent, credible, and relevant evidence in this case abundantly demonstrates that S.O. made meaningful progress based on her capabilities while attending [school in the District]." (ALJ Op. JA67-68.) On review, the Court agrees with the ALJ's decision and finds that Plaintiffs' arguments fail for the reasons below.

*First*, as Defendant argues (*see* Def.'s Moving Br. 31-32), S.O.'s progress reports and attendance must be considered in light of the circumstances of the COVID-19 pandemic (*see* PSOF ¶¶ 26, 31; DRSOF ¶¶ 26, 31 (noting that contents of progress reports speak for themselves)). "Remote instruction is not a per se violation of the IDEA." *Abigail P. through Sarah F. v. Old Forge Sch. Dist.*, 105 F.4th 57, 66 (3d Cir. 2024). Rather, school districts may make changes and/or

reduce a student's work day "only if they continue to offer an educational program reasonably calculated to confer meaningful educational benefits *in light of the child's individual circumstances*" which "can surely be affected by a global pandemic." *Id.* at 67 (emphasis in original). Here, the record shows that S.O.'s November 2020 IEP: (1) stated that during virtual learning, "[S.O.] has been fairly consistent with homeroom attendance . . . . During group/check-in, [S.O.] has been an active participant, cooperative and verbal" (PSOF ¶¶ 59-60; DRSOF ¶¶ 59-60 (alterations in original) (citing JA163-80); JA168); (2) indicated that S.O. "always logs on to the Google meet session on time . . . [and] completes all her work on time" (JA169); and (3) noted in regard to distance learning, that S.O. "has adapted to these new routines and can usually follow them independently" (*id.*). Moreover, Barr testified that during the Spring of 2020, S.O. "was still getting career and vocational transition skills because [those are] embedded in [the District's] program, and [the District's] life skills and . . . careers class, but [S.O.] didn't have the actual work based placement." (JA386:14-20; *see also* DRSOF ¶ 26 (directing Court to Barr testimony at JA386:14-20).) The Court, therefore, finds that the record, as presented to the ALJ, does evidence that S.O. experienced progress and received programming geared towards preparing S.O. for adulthood, even if she had more absences than she did pre-COVID.

*Second*, Plaintiffs do not present any record evidence that S.O.'s mask exemption denial resulted in denial of a FAPE. (*See generally* Pls.' Moving Br.) Rather, as the ALJ noted, in response to S.O.'s "issues connected to 'constant change, virtual, in person, mask mandates[,]' [b]y June 2021, the District put a [one-on-one] aide with S.O. for safety" and also provided S.O. with "unlimited breaks" throughout the year. (ALJ Op. JA59.) Despite such accommodations, the ALJ noted that the District denied Plaintiffs' request for a mask exemption. (*Id.*) It was after this denial, in Fall 2021, when S.O. made the decision not to return to the District. (*Id.*) The Court sees

no reason to disrupt the ALJ's factual findings or conclusion regarding S.O.'s COVID-19-related accommodations and denial of the mask exemption.

*Third*, although Plaintiffs rely significantly on Havens's testimony and report to support their argument that S.O.'s IEPs were insufficient (*see* Pls.' Moving Br. 28), the ALJ did not find Havens's testimony or report to be availing in this regard (*see* ALJ Op. JA68; *see also id.* at JA64 (noting that "Havens['s] opinion was admittedly based on facts acquired from the lawyer")). Plaintiffs do not introduce non-testimonial evidence to convince the Court that it should reach a contrary conclusion regarding Havens's lacked experience or knowledge with respect to S.O.'s case. (*See generally* Pls.' Moving Br.) As Third Circuit precedent dictates, this Court will not disturb the ALJ's credibility determinations unless Plaintiffs introduce non-testimonial extrinsic evidence convincing the Court to do so. *See D.S.*, 602 F.3d at 564. The Court therefore finds unpersuasive Plaintiffs' arguments concerning Havens's testimony that S.O. was deprived of a FAPE. (*See* Pls.' Moving Br. 28-29.)

As the appealing party, Plaintiffs have not met their burden of persuasion. *See J.M.*, 2020 WL 6281719, at *6. They have not raised credible evidence that the ALJ was incorrect in his finding that S.O. made appropriate progress on her educational and vocational goals, nor have they shown that Defendant improperly denied her a mask exemption. This Court therefore affirms the ALJ's findings that S.O. received a FAPE during the period that she attended school in the District.

**B. Plaintiffs' Arguments That S.O. was Denied a FAPE While Attending the Center School**

Plaintiffs also argue that, by providing a CSP to allow S.O. to attend the Center School after graduating from the District, Defendant has admitted that it deprived S.O. of a FAPE and was providing S.O. with a compensatory education. (Pls.' Moving Br. 29-30.)

An award of compensatory education is appropriate and entitlement to such award accrues when a school "knows or should know that the student is receiving an inappropriate education." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 272 (3d Cir. 2007) (citation omitted). "Compensatory education 'aim[s] to place disabled children in the same position they would have occupied but for the school district's violations of IDEA,' by providing the educational services children should have received in the first instance." *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 608 (3d Cir. 2015) (alteration in original) (quoting *Reid v. District of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005)). If a student has not been denied a FAPE, then the student is not entitled to a compensatory education. *Perrin ex rel. J.P. v. Warrior Run Sch. Dist.*, No. 13-2946, 2015 WL 6746306, at *15 (M.D. Pa. Sep. 16, 2015). A compensatory education is also "not an appropriate remedy for a purely procedural violation of the IDEA." *Benjamin A. through Michael v. Unionville-Chadds Ford Sch. Dist.*, No. 16-2545, 2017 WL 3482089, at *10 (E.D. Pa. Aug. 14, 2017) (citation omitted).

The ALJ found that the District "satisfied its burden of proof that S.O. was offered [a] FAPE while a student in the [District] and through the fourteen months of gratuitous compensatory services it provided at the Center School before [S.O.] turned twenty-one[.]" (ALJ Op. JA68.) The Court finds no reason to disturb the ALJ's finding here. The evidence in the record supports the conclusion that S.O. received a FAPE while she was a student at the District, and as already discussed, Plaintiffs have not presented evidence to rebut this. Moreover, as discussed in detail below, once S.O. graduated (which she did), the District no longer had any legal obligation to provide her a FAPE. It would be, as Defendant argues, an abuse of its goodwill to transform its "gratuitous offer" into a legal admission that the District deprived S.O. of a FAPE. (Def.'s Moving

Br. 34.) The Court, therefore, rejects Plaintiffs' argument that the offering of a CSP to S.O. post-graduation shows that S.O. was denied a FAPE.

### C. Plaintiffs' Arguments Regarding a Procedural Denial of a FAPE

Plaintiffs next argue that the ALJ's decision should be overturned because the ALJ erred in finding that S.O. properly graduated. (Pls.' Moving Br. 30-38.) Defendant argues that Plaintiffs mischaracterize the procedural requirements and overlook evidence in the record regarding S.O.'s graduation. (*See* Def.'s Moving Br. 34-38.)

As the ALJ correctly stated, a procedural violation, such as failure to follow notice requirements, "is actionable under the IDEA only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits." (ALJ Op. JA68 (first citing *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525-26 (2007); and then citing *J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 953 (9th Cir. 2010))); *see also* N.J. Admin. Code § 6A:14-2.7(k) (The ALJ can determine there was a deprivation of a FAPE "only if the procedural inadequacies: (1) [i]mpeded the child's right to a FAPE; (2) [s]ignificantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of FAPE to the child; or (3) [c]aused a deprivation of educational benefits."); *Frith v. Galeton Area Sch. Dist.*, 900 F. Supp. 706, 713 (M.D. Pa. 1995) ("[C]ourts have held that technical non-compliance with the notice provisions is not a violation of the [IDEA] if the parents had actual notice and were not deprived of any substantive right." (collecting cases)); *Trenton Pub. Sch. Dist. Bd. of Educ. v. S.M. ex rel. D.M.*, No. 24-9269, 2024 WL 4664097, at *6 (D.N.J. Nov. 4, 2024) (stating that "notice must be given to a parent and that a parent be given every opportunity to present complaints about their children's education").

Here, the ALJ found that:

> S.O. received her high school diploma through the mail from the [D]istrict . . . . After completing all state requirements for graduation[,] S.O. was dropped from the rolls after refusing to attend the Possibilities Plus Transition Program . . . . Receipt of the diploma by regular mail and through hand delivery after her refusal to attend the programming satisfies the undersigned. I agree that when S.O. was dropped from [the District's] enrollment for refusal to attend its programming, the District no longer had any obligation to provide her with FAPE because she was no longer a student but a graduate.

(ALJ Op. JA70.) The ALJ also specifically noted that he did "not believe that the diploma was not received by [Plaintiffs]." (*Id.*) The Court agrees with the ALJ's conclusion and notes that procedural violations, while worthy of scrutiny, do not automatically mean a student has been denied a FAPE. Plaintiffs raise a number of legal and evidentiary arguments in refutation of the ALJ's findings about S.O.'s graduation. These arguments are addressed, and rejected, in turn below.

### *1. S.O.'s Diploma*

Plaintiffs argue that: (1) S.O. never "legally graduated"; and (2) the District's notice that S.O. would graduate and the alleged mailing of the diploma were not procedurally sufficient. (*See* Pls.' Moving Br. 30-33.) Defendant, however, contends that Plaintiffs' arguments fail because: (1) "[b]y the conclusion of the 2020-2021 school year, Plaintiffs were informed that S.O. had earned 153.750 credits, far in excess of the 120 core credits required by the State of New Jersey to graduate"; (2) "[t]here is no requirement . . . that the information be provided in a mandated format or prepared at or before an IEP meeting scheduled prior to graduation"; (3) "Plaintiffs were apprised at the November 19, 2020[,] IEP meeting of the intention to transition S.O. into post-secondary programming effective for the 2021-2022 school year"; and (4) Plaintiffs' refusal to respond to Barr about S.O.'s refusal to attend the Possibilities Plus Program was a "self-directed

change in placement, not initiated by District personnel" and Plaintiffs did not "initially refute the receipt of [S.O.'s] diploma and DDD application." (Def.'s Moving Br. 34-36 (emphasis omitted).)

"Individuals with disabilities do not have an interminable entitlement to a FAPE. Rather, in addition to aging out of eligibility, . . . '[t]he obligation to make FAPE available to all children with disabilities does not apply . . . [to] [c]hildren with disabilities who have graduated from high school *with a regular high school diploma*.'" *M.N. v. Sparta Twp. Bd. of Educ.*, No. 21-19977, 2022 WL 1093667, at *4 (D.N.J. Apr. 12, 2022) (emphasis and second alteration in original) (quoting 34 C.F.R. § 300.102(a)-(3)(i)). "[T]he term regular high school diploma means the standard high school diploma awarded to the preponderance of students in the State that *is fully aligned with State standards*[.]" *Id.* at *5 (emphasis in original) (quoting 34 C.F.R. § 300.102(a)(3)(iv)). Pursuant to N.J. Admin. Code § 6A:14-4.11,

> [t]he IEP of a student with a disability who enters a high school program shall specifically address the graduation requirements. The student shall meet the high school graduation requirements pursuant to [N.J. Admin. Code] 6A:8–5.1, except as specified in the student's IEP. The IEP shall specify which requirements would qualify the student with a disability for the State-endorsed diploma issued by the [D]istrict . . . responsible for . . . her education.

N.J. Admin. Code § 6A:14-4.11(a). Moreover, "[g]raduation from high school with a regular diploma constitutes a change in placement, requiring written prior notice in accordance with § 300.503."[4] 34 C.F.R. § 300.102(a)(3)(iii); *see J.D. v. Haddonfield Sch. Dist.*, 811 F. Supp. 3d 682, 688 (D.N.J. 2025).

Here, the record reflects, and the ALJ correctly concluded that, S.O. received her regular high school diploma and Plaintiffs were put on notice of S.O.'s graduation. (*See* ALJ Op. JA69-70.) *First*, the ALJ found that "S.O. received her high school diploma through the mail from the

[4] New Jersey Regulations contain nearly identical language regarding graduation being a change of placement requiring written notice. *See* N.J. Admin. Code § 6A:14-4.11(b).

[D]istrict." (*Id.* at JA70.) This conclusion is supported by evidence in the record, including Barr's testimony that: (1) the District mailed S.O.'s diploma to Plaintiffs; and (2) despite Plaintiffs' denial of receipt of the diploma, S.O. sent "e[-]mail[ correspondence] . . . to friends and [made] Instagram posts" acknowledging that she had received her diploma. (*Id.* at JA59.) The ALJ also specifically noted that he "d[id] not believe that the diploma was not received by [Plaintiffs]" and that "[t]he fact that T.O. denied receipt of the diploma is suspicious." (*Id.* at JA70.)

*Second*, the Court finds that the record supports that S.O. received a "regular diploma." *See* 34 C.F.R. § 300.102(a)(3)(iii). In his Opinion, the ALJ concluded that "[a]fter completing all state requirements for graduation[,] S.O. was dropped from the rolls after refusing to attend the Possibilities Plus . . . Program." (ALJ Op. JA70.) The record also reflects that: (1) S.O. exceeded her credit hour requirement (JA185; JA394:18-395:2; JA517:22-518:3); and (2) even though S.O. had fifty-one absences, she "finished academically strong with straight A's in all classes" (JA191). S.O.'s most recent 2020 IEP required her to meet the statewide requirements for attendance and credit hours. (JA179.) The only modification to the statewide requirements was that "[S.O.] is not required to pass the [New Jersey Student Learning Assessments ('NJSLA')] . . . or the transitional graduation requirements and she is not required to participate in the portfolio appeals process." (*Id.*) Given that S.O. met the requirements set out in her IEP, the ALJ was correct in his finding that S.O.'s diploma met the standards for a "regular diploma." 20 U.S.C. § 1414(b)(5)(A).

*Third*, the record reflects that Plaintiffs were aware that S.O. had met the requirements for graduation. *See* 34 C.F.R. § 300.102(a)(3)(iii). S.O.'s transcript showed that she had completed the credits necessary to graduate. (JA185.) An e-mail message from Barr to Plaintiffs dated June 21, 2021, stated "Congratulations on your child graduating from [the District]!" (JA184.) The e-mail message also informed Plaintiffs that S.O. would receive a certificate (instead of a diploma)

at the end of twelfth-grade stating that she had completed her graduation requirements and would be returning for the Possibilities Plus Program the following school year. (*Id.*) This is corroborated by an image of S.O.'s graduation certificate. (JA231.) On September 21, 2021, Barr copied Plaintiffs and District administrators on a response to an e-mail message from S.O., in which Barr informed S.O. that because she had met the requirements for graduation, the District would respect S.O.'s decision not to attend the Possibilities Plus Program and mail her a copy of her diploma. (JA234.) The District then mailed Plaintiffs S.O.'s diploma enclosed with correspondence dated October 18, 2021. (JA188.) Plaintiffs had nearly four weeks between the September 21 e-mail message and the October 18 correspondence to challenge S.O.'s graduation, but they did not do so. Plaintiffs were therefore not deprived of the opportunity to participate in the decision-making process regarding S.O.'s change in placement and were on notice of S.O.'s graduation.

Plaintiffs have not cited to any nontestimonial evidence that would justify a different conclusion here. *See J.M.*, 2020 WL 6281719, at *6. As such, accepting the ALJ's factual findings as prima facie true and not finding evidence convincing the Court to disturb the ALJ's credibility determinations regarding Plaintiffs' receipt of the diploma, the Court finds that S.O. received her regular diploma and met the requirements for graduation. *See D.S.*, 602 F.3d at 564.

### *2. Plaintiffs' Argument Regarding the Lack of an IEP Meeting or Graduation Meeting*

Plaintiffs next contend that in order for S.O. to have graduated, the District needed to hold an IEP meeting or graduation meeting before graduation to discuss her change in placement. (*See* Pls.' Moving Br. 34-35.) Defendant counters that: (1) Plaintiffs would have had an IEP meeting in November 2021, which did not occur because S.O. voluntarily chose to stop attending school before that time; and (2) S.O. had already satisfied her graduation criteria by November 2021. (Def.'s Moving Br. 35-36.)

As addressed above, a child is deprived of a FAPE due to a procedural violation only if the violation: (1) "impeded the child's right to a [FAPE]"; (2) "significantly impeded the parents' opportunity to participate in the decision[-]making process regarding the provision of a [FAPE] to the parents' child"; or (3) "caused a deprivation of educational benefits." *Winkelman*, 550 U.S. at 525-26. In his Opinion, the ALJ concluded that "[t]he credible evidence demonstrates that S.O. received [a] FAPE and that [Plaintiffs] had meaningful participation in [S.O.'s] educational process." (ALJ Op. JA68.) In support of this conclusion, the ALJ noted that: (1) "Barr testified that while there is no specific 'graduation meeting,' graduation is usually discussed at a student's annual IEP review meeting"; (2) "at S.O.'s 2020 IEP meeting for her twelfth grade year, the post-graduation plan [discussed] was for her to attend" the Possibilities Plus Program; and (3) S.O.'s parents' "participation in S.O.'s education, when they chose to communicate with the District, was meaningful throughout her high school and post-high school education." (*Id.* at JA69.)

Even if the District was supposed to have a separate meeting before graduation, which the Court is not convinced it was required to do, Plaintiffs have not presented any evidence as to how that procedural violation rose to the level of finding that S.O. was denied a FAPE. The Court therefore finds that S.O. was not denied a FAPE based on any lack of pre-graduation meeting.

### *3. Plaintiffs' Argument that the District "Undid" S.O.'s Graduation*

Lastly, Plaintiffs argue that the District "actually 'undid' [S.O.'s] graduation, 'un-graduating' her, by re[-]enrolling S.O. into the school district in the Spring of 2022, when she was placed at the Center School." (Pls.' Moving Br. 35.) Plaintiffs contend that they obtained proof that "during [the] time period [] when [S.O.] was placed at the Center School . . . [Defendant] had reported to the [New Jersey Department of Education ('NJDOE')] that [S.O.] had been re[-]enrolled and, effectively, un-graduated, with a graduation date changed to have occurred after

her completion of the 2022-2023 school year[.]" (*Id.* at 36.) In support of this argument, Plaintiffs direct the Court to various e-mail messages exchanged with the Custodian of Records at the NJDOE. (*Id.* (citing JA296-306).)

The referenced e-mail messages and records, however, do not support Plaintiffs' argument. (*See* JA296-306.) In fact, in an e-mail exchange between the Custodian of Records and Plaintiffs' counsel dated November 28, 2023, the Custodian of Records noted that while there were multiple dates regarding graduation and re-enrollment noted in S.O.'s record, "[s]ince graduation locks the cohort information in place as soon as [S.O. is] marked as a graduate for the first time, [S.O.'s] official exit date in regard to the graduation cohort remained 10/18/2021 despite the future updates to the record." (JA303.) The record therefore supports the ALJ's finding that S.O. graduated in October 2021, and the Court finds no credible reason to overturn this determination. (*See* ALJ Op. JA69-70.)

## IV. CONCLUSION

For the reasons set forth herein, Defendant's Cross-Motion for Summary Judgment is granted. Plaintiffs' Cross-Motion for Summary Judgment is denied. The ALJ's Opinion is affirmed and Plaintiffs' Count One is dismissed with prejudice. The Court will issue an Order consistent with this Memorandum Opinion.

*/s/ Michael A. Shipp*
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

DATED: August 17, 2026